```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      )    Criminal No. 06-26
                              )
          v.                  )
                              )
CYRIL H. WECHT                )
```

**MEMORANDUM IN OPPOSITION TO
MOTION TO RELEASE DEFENDANT ON PERSONAL RECOGNIZANCE**

In this case, the United States recommended that the defendant, Cyril H. Wecht, be released pending trial on an unsecured appearance bond in the amount of $200,000. This was a rather unremarkable request for a very reasonable bond -- one that would not require the defendant to post any money, collateral, security, or otherwise come out-of-pocket, and one that would require defendant to pay $200,000 only if he failed to appear as required in this matter. In a typical case, a defendant would willingly stipulate to an unsecured appearance bond, because such a bond imposes no burden whatsoever on the defendant, and only comes into play if the defendant flees.

In this case, however, the defendant contends that an unsecured bond is "excessive," and not authorized in this case by the Bail Reform Act. In support of this contention, defendant puts forward several legal arguments, all of which are, quite simply, wrong.

Primarily, the defendant argues that the government must show that the defendant is either a risk of flight or a danger to the

community in order to seek an unsecured appearance bond. The defendant misstates the law. In fact, an unsecured appearance bond is precisely the type of bond authorized by statute in cases where there is *no* risk of flight or danger to the community. Title 18, United States Code, Section 3142(b) provides that:

> **Release on personal recognizance or unsecured appearance bond.**--The judicial officer shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of release, unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

Thus, the government need only show risk of flight or danger to the community in order to obtain a bond more restrictive than a an unsecured appearance bond. In other words, an unsecured bond is the appropriate bond in cases where there is *no* risk of flight or danger to the community. *See, e.g., United States v. Patriarca,* 948 F.2d 789, 791 (1st Cir. 1991) (if "the defendant presents no danger to the community and no risk of flight, then the defendant can be released on personal recognizance or unsecured appearance bond as prescribed in 18 U.S.C. § 3142(b)"). It is only when the government seeks a bond with security, collateral, or other types of restrictions, or when the government seeks detention, that it must establish risk of flight or danger to the community. *See* 18 U.S.C. § 3142(c)-(f).

Thus, nearly the entire breadth of defendant's legal memorandum is beside the point, and addresses standards and cases where the government is seeking restrictive bonds under section 3142(c), or even pretrial detention. *See* paragraphs 5, 6, and 7 of defendant's motion; *Unites States v. Himler*, 797 F.2d 156 (3d Cir. 1986) (a case in which the government sought **pretrial detention,** but cited by defendant in this case for the proposition that the "government has the burden to prove risk of flight by a preponderance of the evidence and danger to the community by clear and convincing evidence"); *United States v. Hudspeth*, 143 F.Supp.2d 32 (D.D.C 2001) (same); *United States v. Chagra*, 850 F.Supp. 354 (W.D. Pa. 1994) (same). If the government had sought to **detain** Cyril H. Wecht without bond pending trial, the government would have had to establish risk of flight or danger to the community; however, the government has not sought pretrial detention in this case. The government instead requested an **unsecured** bond. Under 18 U.S.C. § 3142(b), an unsecured appearance bond does not require a showing of risk of flight or danger to the community, and is precisely the type of bond called for in this situation.

Moreover, section 3142(b) does not express a preference for release on personal recognizance versus release pursuant to unsecured appearance bonds -- both are equally available even where there is no risk of flight or danger to the community. Nevertheless, the defendant argues that "[a]n unsecured appearance

3

bond should only be utilized if release on personal recognizance will not reasonably assure the appearance of the defendant." In support of this assertion, the defendant cites to *United States v. Figueroa*, 347 F.Supp. 112 (D. Mass 1972) and *Wood v. United States*, 391 F.2d 981 (1968). Neither case stands for defendant's assertion.

In *Figueroa*, there is no mention of an unsecured bond in any way, much less any statement that "an unsecured appearance bond should not be utilized." Instead, the court addressed a $5,000 "bail" order. The court specifically noted that one of the defendants had five children, while the other was supported by his wife, a factory worker. This reference to the defendants' financial circumstances indicates that the $5,000 bail was money that the defendants were required to post in order to obtain their release. Without analysis, the court overturned those bail orders and ordered the defendants released on their recognizance. Again, however, the court did not address or discuss unsecured appearance bonds in way, much less state they "should not be utilized."

Likewise, in *Wood*, the court addressed a bond order requiring the defendant to actually post a cash bond, but did not address or discuss unsecured appearance bonds in any way.

As of the filing of this memorandum, not one single case has been cited by the defendant or located by the government where a defendant challenged on appeal the imposition of a purely unsecured

appearance bond instead of a release on personal recognizance. It is not surprising that courts have not addressed the issue of whether a personal recognizance bond is preferable to an unsecured appearance bond. Few, if any, defendants granted an unsecured appearance bond would appeal such a bond, as it is exceedingly unrestrictive, and has consequences only if the defendant violates the bond conditions.

While there are no cases addressing the issue, at least one commentator has discussed the relative merits of the personal recognizance bond versus the unsecured appearance bond, and found the unsecured bond preferable in circumstances such as we face in the instant case:

> No preference is established between releasing a defendant on trust or on an unsecured appearance bond. In the case of an indigent, the difference would seem to be only problematic. As a matter of policy, the court should evidence its trust in such a defendant by requiring no bond. With a defendant of some financial ability, the personal bond would probably have a greater effect in deterring flight than would a release on recognizance. Release on an unsecured appearance bond should be used in those cases where it is found that an additional, but minimal, increment of deterrence is necessary.

Note, The Bail Reform Act of 1966, 1967, 53 Iowa L.Rev. 170, 181 (quoted at 3B Fed. Prac. & Proc. Crim.3d § 762). Without question, this defendant has "some financial ability," justifying an unsecured appearance bond.

There are other reasons why the requested unsecured appearance bond is appropriate. First, a less culpable, less financially able

defendant in a related case -- George T. Hollis -- was released on a $100,000 unsecured appearance bond. Second, the defendant faces a substantial sentence if convicted. The loss amount from his crimes is estimated to exceed $1,000,000, resulting in a potential guideline range that could exceed ten years imprisonment. Contrary to defendant's arguments, a lengthy potential sentence is a relevant factor in determining bond. *See, e.g. United States v. Namer,* 238 F.3d 425 (6th Cir. 2000) (upholding the detention of a defendant charged with wire and other frauds, in light of the potentially lengthy sentence, the seriousness of the charges, the weight of the evidence, and other factors).

In fact, Courts have even found pretrial detention appropriate in white collar cases where the defendant faced a lower sentence than the defendant faces in the instant case. For example, in *United States v. Epstein,* 155 F.Supp.2d 323 (E.D.Pa. 2001), the court found that a wire-fraud defendant posed a serious risk of flight, despite his substantial assets in the United States, his absence of criminal history, and his rapid acceptance of responsibility for his crime. In so holding, the *Epstein* court noted:

> While he [defendant] and his wife own two condominiums in the Miami area and have other assets in this country worth about $1 million, they and their children, as well as other family members, are permanent residents of Brazil. He has property there with at least four times the value of his property here. He also makes a sizeable salary at a company located there. In addition, the United States and Brazil have no

6

>    extradition treaty. If he were to flee to his homeland, there is virtually no chance that he could ever be brought to justice in the United States. Finally, from the information produced at the detention hearing, it is undisputed that the evidence against the defendant for the crime of wire fraud appears to be very strong. The likelihood of his conviction and incarceration is great. Defense counsel argues that, even so, the guideline sentence would only be between 37 and 46 months and may be as low as 24 months because of prompt restitution. Two to four years in jail, according to counsel, is not long enough to tempt defendant to abscond. ***We disagree. This sentencing range is a sufficiently unpleasant prospect to persuade defendant under the present circumstances to exit the United States if he had the opportunity***.

*Id*. at 325-26 [emphasis supplied].

In this case, the government has not sought detention. The government has not even sought a restrictive bond such as those permitted by section 3142(c). Instead, the government has asked that this defendant be required to pay $200,000 ***only if he fails to appear***. In light of the nature of the charges, the defendant's considerable financial wherewithal, and the similar bond imposed in the related case of *United States v. George T. Hollis*, this minimally restrictive unsecured signature bond is reasonable and appropriate.

In sum, the defendant misconstrued the statute and misstated the case law in an effort to reduce an already unrestrictive and reasonable bond request.[1] The motion should be denied.

---

[1] In doing so, of course, the defendant made several self-serving (and inaccurate) comments on the merits of the criminal charges in the indictment and the defendant's reputation. For example, on page 6 of his motion, defendant claims (without any

7

---

support or citation) that the "evidence against Dr. Wecht is marginal and untested."  And on page 7, the motion lauds the defendant's "deep family and community ties to Pittsburgh, together with his work history and community involvement," and urges that his "livelihood and reputation depend upon the successful defense of these charges."

WHEREFORE, the United States respectfully requests that the defendant, Cyril H. Wecht, be released on an unsecured appearance bond in the amount of $200,000 pursuant to Title 18, United States Code, Section 3142(b).

                                              MARY BETH BUCHANAN
                                              United States Attorney


                              By:   S/_____
                                    STEPHEN S. STALLINGS
                                    Assistant U.S. Attorney
                                    Fla. Bar No. 958859

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the within Memorandum was served by facsimile and first-class mail to and upon the following:

>Dick Thornburgh, Esq.
>Kirkpatrick & Lockhart Nicholson Graham LLP
>1800 Massachusetts Avenue, N.W.
>Washington, DC 20036-1221.
>
>Mark A. Rush, Esq.
>Kirkpatrick & Lockhart Nicholson Graham LLP
>Henry W. Oliver Bldg.,
>535 Smithfield Street
>Pittsburgh, PA 15222-2312
>
>J. Alan Johnson, Esq.
>Cynthia Reed Eddy, Esq.
>Johnson & Eddy
>1720 Gulf Tower
>707 Grant Street
>Pittsburgh, Pennsylvania 15219

>S/_____
>STEPHEN S. STALLINGS
>Assistant U.S. Attorney